Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7436 | **DATE** | 6/25/2004 |
| **CASE TITLE** | Hurtado vs. Briley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___.
(3) ☐ Answer brief to motion due ___. Reply to answer brief due ___.
(4) ☐ Ruling/Hearing on ___ set for ___ at ___.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ set for ___ at ___.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ set for ___ at ___.
(7) ☐ Trial[set for/re-set for] on ___ at ___.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at ___.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)    ☐ Local Rule 41.1    ☐ FRCP41(a)(1)    ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, The Court concludes that petitioner is not entitled to habeas relief. Petitioner's petition for a writ of habeas corpus is hereby dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 28 2004 date docketed | |
| | Notified counsel by telephone. | | | 9 |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | 2004 JUN 25 PM 4:42 | 6/25/2004 date mailed notice | |
| MD | courtroom deputy's initials | FILED-EOD Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| United States of America ) <br> ex rel. ROBERTO HURTADO (#K-79902), ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> KENNETH BRILEY, ) <br> Warden, ) <br> Stateville Correctional Center, ) <br> ) <br> Respondent. ) <br> ) | No. 03 C 7436 <br> Judge Joan H. Lefkow |

DOCKETED

JUN 2 8 2004

## MEMORANDUM OPINION AND ORDER

In his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, petitioner Roberto Hurtado ("Hurtado") challenges his conviction for two counts of first degree murder and two counts of aggravated kidnaping entered in the Circuit Court of Cook County, Illinois. Hurtado argues that he is entitled to habeas relief because his confession was obtained in violation of Vienna Convention. For the reasons stated below, the petition is denied.

### HABEAS STANDARD

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this court must deny Hurtado's petition for a writ of habeas corpus with respect to any claim adjudicated on the merits in the state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003). A state court's decision is contrary to clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000)

A state court's decision is an unreasonable application of clearly established Supreme Court law "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* In order for a state court decision to be considered "unreasonable" under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case.").

Before reviewing the state courts' decisions, however, the court must determine whether Hurtado fairly presented his federal claims to the state courts, as any claim not presented to the state's highest court is deemed procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). Moreover, "[a] federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). A federal court may not grant habeas relief on a defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result

2

in a fundamental miscarriage of justice. *Coleman* v. *Thompson*, 501 U.S. 722, 750 (1991); *Anderson* v. *Cowen*, 227 F.3d 893, 899 (7th Cir. 2000).

## BACKGROUND

### A. Procedural History

On January 26, 2000, following a jury trial in the Circuit Court of Cook County, Illinois, Hurtado was convicted of two counts of first degree murder and two counts of aggravated kidnaping. He was sentenced to two terms of life imprisonment without parole and two terms of 15 years to run concurrently. Hurtado appealed, arguing (1) that the trial court erred in not suppressing his confession where it was obtained in violation of the Vienna Convention; (2) that he did not receive a fair trial due to inflammatory actions by the victims' families at trial and due to the State eliciting highly prejudicial but irrelevant testimony from a witness; and (3) that the trial court erred in allowing the State to introduce into evidence the existence of another, uncharged murder that was wholly unrelated to the crime and was highly prejudicial to his defense. On October 18, 2002, the Illinois Appellate Court affirmed Hurtado's convictions and sentences. (Resp. Ex. E.)

Thereafter, Hurtado filed a petition for leave to appeal to the Illinois Supreme Court. (Resp. Ex. F.) This petition raised only his argument that the trial court erred in not suppressing his confession because it was obtained in violation of the Vienna Convention. On February 5, 2003, the Illinois Supreme Court denied Hurtado's petition for leave to appeal. (Resp. Ex. G.) Hurtado filed this habeas petition on October 21, 2003. Because this petition was filed within one year after the conclusion of Hurtado's direct review in the Illinois courts, this court has

jurisdiction to consider the habeas petition. *See* 28 U.S.C. § 2244(d)(1)(A); *Gray v. Briley*, 305 F.3d 777, 778 (7th Cir. 2002).

**B.    Facts**

When considering a habeas petition, the court must presume that the state courts' factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). Hurtado has not presented clear and convincing evidence to rebut this presumption. Therefore, the court adopts the Illinois Appellate Court's recitation of facts in *People v. Hurtado*, No. 98-12993, slip op. at 2-7 (1st Dist. 2002) (unpublished order) (Resp. Ex. E.)

The evidence at Hurtado's trial, including his statement to police (which was published to the jury) and the testimonial witness, showed that the bodies of Jose Romero and Jose Segura were found severely beaten, wrapped in plastic and duct tape and burned in a stolen minivan in early April 1998. The victims were friends and were last seen together shortly before their murders. Both victims died as a result of strangulation and blunt force trauma.

At the time of the murders, the Latin Kings street gang "controlled" the Chicago suburb of Palatine. The gang had split into two rival factions: the Pimptown Latin Kings and the Palatine Latin Kings. Hurtado, along with Raul Dorado, Noel DeLeon, Joseph Dole and George Hernandez, were all members of the Pimptown Latin Kings.

In April 1997, an incident occurred involving the rival gang factions and several Pimptown Latin King members were being sought and/or charged by police, including Dorado's brother, who was a high-ranking member. Some Palatine Latin King members were also

4

arrested, including Steven Venegas. Venegas, who was a cousin of the victim Romero, agreed to testify against members of the Pimptown Latin Kings.

Venegas testified at Hurtado's trial that when Romero and Segura visited him in jail, he told them that he had been threatened by other gang members in prison. When Venegas was released from custody, he told only Romero where he would be living before it was time to testify against members of the Pimptown Latin Kings.

In his statement published to the jury, Hurtado explained that on one night in early April 1998, he was at his apartment with his girlfriend, Lorena Bueno, and their children, when he received a telephone call from Joseph Dole, who told him to not go to sleep because Dorado and DeLeon were coming over. Dorado and DeLeon arrived soon thereafter with the victims, Romero and Segura.

Hurtado told police that initially they all watched television as Bueno took the children into the bedroom. After ten minutes Dorado and DeLeon pulled guns from their waistbands and pointed them at the victims. Dorado told Hurtado to get some rope, and as Hurtado watched, Dorado and DeLeon tied up the victims and took money from them. Hurtado saw Dorado try to page someone on the telephone and, thereafter, Dole arrived.

Dole questioned the victims as to the whereabouts of Venegas, but the victims said they did not know where he was. Dole then began beating them and put duct tape over their mouths. Dole told Hurtado to get Bueno and the children so Dole could take them to a motel. Dole left the apartment while Hurtado, Dorado and DeLeon stayed behind with the victims.

When Dole returned, Hurtado saw Dole, Dorado and DeLeon choke the victims and wrap them in duct tape. Dole told the group to put the bodies in plastic sheets and seal them with the tape. Hurtado helped in accomplishing this task.

Later, Hurtado, Dole, Dorado and DeLeon went to Hernandez's home in Dole's truck. Dole telephoned Hernandez and told him that they were coming and that they needed a van. After picking up Hernandez, they drove to an apartment complex in Arlington Heights where Dorado and Hernandez stole a white minivan.

The group then bought a container of gasoline, went to Hurtado's apartment to retrieve the victims' bodies from a closet and put the victims' bodies into the white minivan. With Dorado and Hernandez in the minivan and Hurtado, DeLeon and Dole following in Dole's truck, the group drove for awhile, exited the expressway and lit the minivan on fire with the victims' bodies inside. Hurtado's statement to police was corroborated by the testimony of Hernandez, Christine Frantz, Hernandez's girlfriend, and Bueno. The jury convicted Hurtado of first degree murder and aggravated kidnaping.

## DISCUSSION

Hurtado's § 2254 petition contains a single claim.[1] He argues that his confession was obtained in violation of Article 36 of the Vienna Convention ("Article 36"), which provides,

---

[1] In one portion of his brief Hurtado mentions the other claims he brought before the Illinois Appellate Court, namely, that he did not receive a fair trial (1) due to inflammatory actions by the victims' families at trial and due to the State's eliciting highly prejudicial but irrelevant testimony from witnesses and (2) because the State introduced evidence of the existence of another uncharged murder. Since Hurtado did not raise these claims in his habeas petition, however, the court does not consider whether he would be entitled to habeas relief. Moreover, it is worth noting that such claims would be procedurally defaulted because Hurtado only sought leave to petition the Illinois Supreme Court on his claim that his confession was obtained in violation of the Vienna Convention. In order to avoid procedural default, habeas claims must be presented to a state supreme court for discretionary review. *E.g.*, *O'Sullivan*, 526 U.S. at 845. Hurtado has not established cause or prejudice or a fundamental miscarriage of justice so as to overcome any such default.

> 1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:
> ***
> (b) If he so requests, the competent authorities of the receiving state shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that state is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this subparagraph[.]

Vienna Convention on Consular Relations, Apr. 24, 1963, art. 36, 21 U.S.T. 77. Hurtado claims that he was not afforded his rights under Article 36 and, for relief, believes he is entitled to a new trial without the introduction of his confession.

The Illinois Appellate Court addressed this claim on the merits. It first acknowledged that Hurtado is a Mexican national and that no government authority notified Hurtado of his rights under Article 36 before he was convicted. Nevertheless, the Illinois Appellate Court concluded that even if the Vienna Convention conferred individual rights on Hurtado, suppression was an inappropriate remedy under the Article 36. That ruling is not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. The Supreme Court has never held that suppression is mandated by violations of Article 36. Moreover, nearly every circuit court has held otherwise, concluding that suppression of evidence is an inappropriate remedy for violations of Article 36. *See, e.g., United States v. Jimenez-Nava*, 243 F.3d 192, 198-99 (5th Cir. 2001); *United States v. Page*, 232 F.3d 536, 540-41 (6th Cir. 2000); *United States v. Lawal*, 231 F.3d 1045, 1048 (7th Cir. 2000); *United States v. Chanthadara*, 230 F.3d 1237, 1255-56 (10th Cir. 2000); *United States v. Chaparro-Alcantara*, 226 F.3d 616, 623-24 (7th Cir. 2000); *United States v. Cordoba-Mosquera*, 212 F.3d

7

1194, 1196 (11th Cir. 2000); *United States* v. *Lombera-Camorlinga*, 206 F.3d 882, 885 (9th Cir. 2000) (en banc); *United States* v. *Li*, 206 F.3d 56, 61-62 (1st Cir. 2000). Because the Illinois Appellate Court's decision affirming the denial of Hurtado's motion to suppress was not contrary to or an unreasonable application of established Federal law, his petition for habeas relief is denied.[2]

## CONCLUSION

Wherefore, for all the above stated reasons, the court concludes that Hurtado is not entitled to habeas relief. This case is terminated.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: June 25, 2004

---

[2] Hurtado has also filed with this court a letter in which he complains of a person acting as an attorney that took sums of money from his family but who did not provide the agreed upon representation to him. To the extent that this motion is construed as a motion to appoint counsel, it is mooted by the above analysis. To the extent Hurtado seeks some other relief, all the court is empowered to do here is rule on the merits of his federal habeas corpus petition.

8